# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2658

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Shane Michael Garner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 14, 1998

Filed:    June 28, 1999

_____

Before McMILLIAN, LAY and HALL,[1] Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Shane Michael Garner appeals from a final judgment entered in the United States District Court[2] for the District of Minnesota finding him guilty, pursuant to a

_____

[1]The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

conditional guilty plea, of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The District court sentenced appellant under the federal sentencing guidelines to 192 months imprisonment and five years supervised release. See United States v. Garner, No. 97-352 (D.Minn. June 6, 1998). For reversal, appellant argues that the district court erred in denying his motion to suppress evidence because the search of his vehicle was not in fact an inventory search but rather a warrantless investigative search for evidence of criminal activity. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. The notice of appeal was timely filed under Fed. R. App. P. 4(b), and jurisdiction on appeal is proper based upon 28 U.S.C. § 1291.

## Background

Appellant was charged with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(B). Appellant filed a motion to suppress evidence and certain statements. After an evidentiary hearing, the magistrate judge[3] recommended that appellant's motion to suppress be denied, and the District Court[4] adopted the Magistrate Judge's findings in full. See id. (Feb. 19, 1998) (adopting the magistrate judge's report and recommendation, id., (Jan. 14, 1998) (hereinafter "Report and Recommendation")). The following statement of facts is based in large part on the

---

[3]The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota.

[4]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota ruled on the motion to suppress. The case was later referred tot Judge Strom, who accepted the guilty plea and imposed sentence.

magistrate judge's report and recommendation. <u>See</u> Report and Recommendation at 1-7.

On October 21, 1997, a confidential informant told Sergeant Gregory Lind of the St. Paul Police Department's narcotics/special investigations unit that appellant had been seen at a bar in St. Paul in possession of methamphetamine and a large amount of cash. On October 28, 1997, Lind saw appellant driving in St. Paul in a 1997 Chevy vehicle. He recognized appellant because he had seen appellant in photographs and interviewed appellant at the Lino Lakes Correctional Facility with respect to an unrelated drug case. Lind, who was in an unmarked cruiser when he spotted appellant, knew from a background and driver's license check that appellant's Minnesota driver's license had been revoked.

After spotting appellant, Lind proceeded to follow him to a house in Oakdale. Appellant pulled into the driveway and parked next to the house. Lind saw appellant exit the vehicle and walk toward the house, but he was unable to see whether appellant actually went inside the house or into a nearby garage. Lind was familiar with the house because it belonged to another individual who had been under investigation for methamphetamine distribution.

After a few minutes, Lind saw appellant walk from the vicinity of the house back to the rear of the Chevy vehicle. Appellant opened the trunk of the vehicle, looked from side to side in a "suspicious manner," and remained at the open trunk for a minute or two. Appellant eventually closed the trunk and walked back in the direction of the house. After several minutes, appellant returned to the vehicle and drove off. Lind followed appellant as he drove toward St. Paul on Interstate 35. As appellant approached an exit, Lind called for the assistance of St. Paul police squads to pull appellant over. St. Paul police officer Herb Carlson responded. After appellant exited the Interstate, he tried to evade police by speeding and driving through an apartment complex's parking lot. Appellant was eventually stopped by a police road block.

The St. Paul police officers approached with their guns drawn and Lind ordered appellant out of the vehicle, conducted a pat-down search on appellant, and asked appellant about the vehicle and insurance. Appellant stated that the vehicle belonged to a friend. Lind instructed Officer Carlson to "tag" appellant for driving after revocation of his license and decided that the vehicle should be towed and impounded according to the City of St. Paul's impound policy. St. Paul Department Policy No. 445.151 states that prior to towing any vehicle, officers shall conduct an inventory search of the vehicle in order to "(1) protect the vehicle owner's property; (2) protect the Department and City against disputes over lost or stolen property; and (3) protect the officers and other employees from dangerous instrumentalities." Id. The policy also provides that the impoundment must be lawful and not a pretext to search a vehicle where other grounds to search are lacking. An inventory search took place at the scene, during which officers took pictures of items before they were seized. During the search, Officer Carlson discovered methamphetamine under the driver's seat of the vehicle. Lind instructed Carlson to transport appellant to a holding cell at police headquarters on charges of possession of a controlled substance.

Sergeant Lind did not complete a specific inventory form to document the items seized in the search. However, the vehicle's contents were recorded in other ways. First, a towing report listed some of the seized contents, including trash, cellular phones, books, oil, clothing, and sports equipment. Second, Lind completed a "property record," which stated that the following were seized during the search: $280 in cash from appellant's person, two cellular phones, a billfold, a small notebook, a gram scale, a pager, and plastic sandwich bags. Furthermore, the photos taken during the search supplemented the lists, revealing a pair of gloves and several packs of cigarettes that were not listed.

The magistrate judge concluded that the police had probable cause to stop the vehicle, the pat-down search was lawful, and the search of the vehicle was a lawful

inventory search. The magistrate judge found that Lind decided to impound the vehicle because (1) appellant was alone in the vehicle, (2) his driver's license had been revoked, (3) the vehicle was in a no-parking zone, (4) it was on a busy street near rush hour, (5) it was in a high-crime area, (6) the vehicle was valued at approximately $15,000, (7) it was unclear whether the vehicle had been stolen or whether appellant had permission to drive the vehicle, (8) Lind and the City of St. Paul were responsible for the vehicle, and (9) neither appellant nor Lind could drive the vehicle. See Report and Recommendation at 4. The magistrate judge specifically rejected appellant's argument that the inventory search was a pretext for an impermissible investigative search. See id. at 7.

## Discussion

For reversal, appellant argues that the district court erred in denying his motion to suppress because the search was not an inventory search, but rather a warrantless investigative search for evidence of criminal activity. First, appellant argues that the police did not act in good faith for the administrative purpose of conducting an inventory search; rather, the inventory search was a pretext for searching his vehicle for evidence of drugs. Second, appellant argues that the police officers' failure to produce an inventory list demonstrates their unlawful motive for conducting the search and that they failed to comply with the St. Paul policy.

We review questions of law de novo and findings of fact for clear error. See United States v. Beatty, 170 F.3d 811 (8th Cir. 1999); Ornelas v. United States, 517 U.S. 690, 698-99 (1996).

**Pretext**

Appellant first argues that the inventory search was invalid because it was conducted for the ulterior motive of searching for evidence of drug trafficking. Appellant alleges that the police officers acted in bad faith because the true reason for the search was investigative and that the inventory search was merely a pretext to achieve this otherwise impermissible goal.[5] We disagree.

The presence of an investigative motive does not invalidate an otherwise valid inventory search. See, e.g., United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993), cert. denied, 511 U.S. 1111 (1994); see also United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993) (holding police are not precluded from conducting an inventory search when they lawfully impound the vehicle of an individual they also suspect to be involved in crime). In this case, the police possessed valid reasons to impound the vehicle, which under the St. Paul impound policy, required an inventory search prior to impoundment. These reasons included: the vehicle was in a no parking zone on a busy street, it was worth more than $15,000, it was in a high-crime area, and the City of St. Paul was responsible for its protection. The fact that the officers also suspected appellant was involved in drug trafficking and might have evidence of such activity in the vehicle does not invalidate the officers' decision or demonstrate they acted in bad faith. See Marshall, 986 F.2d at 1176.

---

[5]Appellant likens his case to United States v. Castro 129 F.3d 752 (5th Cir. 1997), where the Fifth Circuit invalidated an inventory search on the ground that it was actually conducted for investigatory purposes. However, since briefing of this case, the Fifth Circuit reversed Castro en banc. United States v. Castro,166 F.3d 728, (5th Cir. 1999) (en banc) (per curiam). Accordingly, we will not analyze the application of Castro's reasoning to this case.

## Failure to produce an inventory list

Appellant next argues that the police officers' failure to produce an "inventory list" of the vehicle's contents demonstrates that their true goal was not to protect appellant's property and limit the City's liability, but to find evidence of drug trafficking. Appellant argues that this violation of department procedures proves the pretextual nature of the search and renders it invalid. Again, we disagree.

St. Paul's impound policy does not require that the results of an inventory search be listed on a specific form nor that the inventory search be conducted in a particular manner. Regarding the manner to conduct an inventory search, Policy 445.151 only states that an inventory search shall be conducted prior to towing to the impoundment lot and that officers are permitted to search inside any container discovered if the officers are unable to ascertain its contents by examining its exterior. See Policy 445.151. The district court found, and we agree, that the police officers complied with these requirements when they conducted the inventory search of appellant's vehicle. See Report and Recommendation at 7. Furthermore, at the evidentiary hearing on appellant's motion to suppress, Lind testified that St. Paul police generally only record valuable items discovered during an inventory search. This is why the "property record" included money, cellular phones, and drug paraphernalia, and why the only items that appear in the photos but not on either list were gloves and cigarettes. Since neither the city policy nor the police procedures required the officers to record all items recovered during the inventory search on a specific form or in a particular fashion, the officers' failure to draft an inventory list does not prove the search was pretextual or that they acted in bad faith. See, e.g., United States v. Loaiza-Marin, 832 F.2d 867, 869 (5th Cir. 1987) (failure to complete the inventory forms does not invalidate an otherwise valid inventory search).

**Conclusion**

Since the inventory search of appellant's vehicle was valid and the district court's finding that the police acted in good faith in executing the City of St. Paul's inventory policy is not clearly erroneous, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.