**WEST LIBERTY FOODS, L.L.C., Plaintiff,**

v.

**MORONI FEED COMPANY, Defendant.**

No. 4:10–cv–00146–JEG.

United States District Court, S.D. Iowa, Central Division.

March 6, 2014.

Angela Ellen Dralle, David A. Tank, Dorsey & Whitney LLP, Des Moines, IA, for West Liberty Foods, L.L.C.

D. Jason Hawkins, Snow Christensen & Martineau, Stanley J. Preston, Preston & Scott, Salt Lake City, UT, Thomas J. Joensen, Bradshaw Fowler Proctor & Fairgrave, Gregory A. Witke, Patterson Law Firm LLP, Des Moines, IA, for Moroni Feed Company.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on Motion by Plaintiff West Liberty Foods,

L.L.C.[1] (West Liberty) to Vacate in Part and Confirm in Part a Certain Arbitration Award (Motion to Vacate) and on Motion by Defendant Moroni Feed Company (Moroni) for Confirmation of Arbitration Award (Motion for Confirmation). The Court held a hearing on the motions on January 15, 2014. Attorneys David Tank and Brian Melhus appeared on behalf of West Liberty. Attorneys Thomas Joensen and Stanley Preston appeared on behalf of Moroni. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

In 2006, West Liberty and Moroni entered into a marketing agreement (Agreement) for the marketing of Moroni's products. In 2010, West Liberty filed a declaratory action in this Court seeking a declaration that it had not breached the marketing agreement, and Moroni moved to compel arbitration in accordance with the arbitration clause in the Agreement. This Court granted Moroni's motion on October 20, 2010 (October 2010 Order). *See W. Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F.Supp.2d 881 (S.D.Iowa 2010). Moroni filed a Demand for Arbitration with the American Arbitration Association (AAA) on February 18, 2012.

A three-member Arbitration Panel held a hearing beginning on March 4 and concluding on March 7, 2013. As recognized by the Arbitration Panel, paragraph 17 of the Agreement required as follows:

> If the dispute is not resolved by the use of a mediator, then any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association [AAA] under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. *The award in such arbitration shall be a reasoned award.*

Agreement ¶ 17, W. Lib. Mot. Vacate—Ex. A, ECF No. 30–2 (emphasis added). On June 27, 2013, the Arbitration Panel issued its Interim Award ordering, inter alia, that the parties "confer and reach agreement as to the allowed pre-judgment interest as of the date of this Interim Award, and submit their agreed upon calculations to AAA within 10 working days." Interim Award 21, W. Lib. Mot. Vacate—Ex. B, ECF No. 30–3. The parties jointly submitted the requested calculations on July 12, 2013.

The parties' joint communication on that date provided as follows:

> At page 21 of the "interim award" entered on June 27th, 2013, the panel directed the parties as follows:

> "The Parties shall confer and reach agreement as to the allowed pre-judgment interest as of the date of this Interim Award, and submit their agreed upon calculations to AAA within 10 working days. Upon receipt of the agreed upon calculations a Final Award will issue."

> Pursuant to the direction given above, the parties have conferred and agree as follows:

> The panel has awarded damages to [Moroni] in the total amount of $4,533,406.71. The parties agree that the amount of pre-judgment interest on this damage award, calculated at a rate of 10% per year, equals $2,152,619.93 as of June 27, 2013, the date of the "Interim Award".

---

1. The record does not disclose all L.L.C. members. However, no issue regarding the citizenship of the members has been raised, and the background circumstances do not suggest any such issue.

The panel has awarded damages to [West Liberty] in the total amount of $1,531,427.41. The parties agree that the amount of pre-judgment interest on this damage award, calculated at a rate of 5% per year, equals $496,765.60 as of June 27, 2013, the date of the "Interim Award".

The parties also agree that the post-judgment interest rate is 2.15% under Utah law and 2.12% under Iowa law.

July 12, 2013, E-mail to AAA, Moroni's Mot. for Confirm.—Ex. D, ECF No. 31–1. On the same day, West Liberty submitted an objection to the Arbitration Panel that Moroni be allowed to receive any prejudgment interest award, which the Arbitration Panel overruled in its Final Award dated August 12, 2013.

West Liberty filed its Motion to Vacate on August 27, 2013, requesting this Court confirm the Final Award as to West Liberty's counterclaim under 9 U.S.C. § 9 and vacate the award of prejudgment interest for Moroni under 9 U.S.C. § 10(a)(4). Moroni filed its Motion for Confirmation on August 27, 2013, requesting this Court confirm the entire award by the Arbitration Panel pursuant to 9 U.S.C. § 9. Additionally, on September 13, 2013, West Liberty filed a Notice of Fraud under Iowa Rule of Professional Conduct 32:3.3 and Federal Rule of Civil Procedure 60 requesting this Court provide a remedy for Moroni's alleged fraudulent conduct that West Liberty believes influenced the Court to grant Moroni's Motion to Compel Arbitration, thus sending this case to the Arbitration Panel.

## II. DISCUSSION

### A. Standard for Confirming or Vacating an Arbitration Award

The Federal Arbitration Act (FAA) at 9 U.S.C. § 9, states,

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

The FAA at 9 U.S.C. § 10(a)(4) states,

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

. . .

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Courts reviewing an arbitral award "accord an extraordinary level of deference to the underlying award itself, because federal courts are not authorized to reconsider the merits of an arbitral award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Stark v. Sandberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793, 798 (8th Cir.2004) (internal citation and quotation marks omitted). "Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* (citation and quotation marks omitted). There is "a liberal federal policy favoring arbitration agreements," so "the FAA only allows a district court to vacate an arbitration award" in the narrow circumstances set

forth in 9 U.S.C. § 10(a). *Id.* at 799 (citation omitted). This Court's authority to modify an arbitration award, if requested by the parties, is set forth in 9 U.S.C. § 11. *Id.*

In *Legion Insurance Co. v. VCW, Inc.,* 198 F.3d 718, 721 (8th Cir.1999), the Eighth Circuit held that "[t]he FAA creates only two avenues for attacking an arbitration award. Under section 10, a district court may vacate an award; under section 11, a district court may modify an award." *See Stark,* 381 F.3d at 799. The court noted that "[o]ur precedents are somewhat unclear as to whether a district court may ever partially vacate an award using the standards of section 10. Because the arbitration panel was explicit in its intent to make an indivisible award, we need not decide all the components of this issue today." *Legion,* 198 F.3d at 721 n. 5 (citing *Centralab, Inc. v. Local No. 816, Int'l Union of Elec., Radio & Mach. Workers of Am.,* 827 F.2d 1210 (8th Cir.1987) (upholding the district court's use of section 10 to vacate and confirm an arbitration award); *UHC Mgmt. Co. v. Computer Scis. Corp.,* 148 F.3d 992 (8th Cir.1998) (holding that section 11 applies to confirm in part and nullify in part an arbitration award)). In 2004, the Eighth Circuit cleared any prior confusion by clarifying that modification of an arbitration award can occur under section 11, and vacating an award in its entirety can occur under section 10. *See Stark,* 381 F.3d at 799.

## B. "Reasoned Award" as to Prejudgment Interest

The parties agree that the Arbitration Panel was required to give a "reasoned award."[2] West Liberty argues that the Arbitration Panel exceeded its powers when it failed to issue a "reasoned award" as to prejudgment interest for Moroni in the Final Award. West Liberty asserts that in order to establish a right to prejudgment interest under Utah law,[3] Moroni's claim must have met specific enumerated requirements involving a mixed question of fact and law, and that the Arbitration Panel failed to address any such requirements.

■ Utah courts have shown concern with awarding prejudgment interest in cases where there are conflicting opinions about the level of injury a person has experienced in a personal injury case, there are future loss amounts a party may experience in a breach of contract case that are difficult to calculate, or any other situations where damages are hard to ascertain. *See Cornia v. Wilcox,* 898 P.2d 1379, 1387 (Utah 1995) (refusing to award prejudgment interest due to conflicting testimony and evidence regarding the value of missing cows at issue in the case); *Canyon Country Store v. Bracey,* 781 P.2d 414, 422 (Utah 1989) (refusing to award prejudgment interest in part because of "the amount of uncertainty involved in determining an actual loss"). However, "[a] dispute, even between experts, as to the precise amount of damages does not necessarily preclude those damages from being measurable or calculable." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC,* 210 P.3d 263, 274 (Utah 2009). An amount subject to mathematical calculation "does not require ... that a party must demonstrate that its damage figures are known

---

2. American Arbitration Association Commercial Arbitration *Rules and Mediation Procedures* R–46 (Form of Award) states that the arbitrator will render a written reasoned award if the parties request such an award in writing prior to the appointment of the arbitrator. As previously discussed, the Agreement provided for a reasoned award. *See* Agreement. ¶ 17, W. Lib. Mot. to Vacate—Ex. A, ECF No. 30–2.

3. In the October 2010 Order, this Court concluded Utah law applied to the Agreement. *See W. Liberty,* 753 F.Supp.2d at 884 n. 2.

and static from the date the claim is filed through the final judgment." *Id.* at 275.

In *Saleh v. Farmers Insurance Exchange*, 133 P.3d 428, 436 (Utah 2006), the court affirmed the denial of prejudgment interest and reasoned "that the additional amounts owed under the policy were not ascertainable by [the defendant] until additional evidence was presented at trial" and therefore "ruled that because the claim was not liquidated before trial, prejudgment interest was unavailable."

Similarly, in *Cornia*, the Utah Supreme Court stated,

"[W]here the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time ... and not from the date of judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy ... the amount of the damages must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed."

898 P.2d at 1387 (alterations in original) (quoting *Canyon Country Store*, 781 P.2d at 422). The *Cornia* court discussed the numerous opinions offered at trial to establish the damages award, as there lacked "any clear factual information," so it was not possible to measure the plaintiffs' damages with "facts and figures" or calculate them with any "mathematical accuracy." *Id.* (quoting *Canyon Country Store*, 781 P.2d at 422).

West Liberty conceded at hearing, as it must, that the Court views the entire arbitration award in the effort to determine if any specific portion of the award is the result of a reasoned analysis. The Arbitration Panel's Interim Award set forth the bases for awarding compensatory damages to Moroni on pages nine through ten, to West Liberty on pages nineteen through twenty, and the full damages break down on page twenty-one. Both parties were awarded prejudgment interest as well as post-judgment interest in addition to their compensatory damage awards. In this case, the calculation of compensatory damages for Moroni was set forth by the Arbitration Panel as follows:

Chesley Erickson, Moroni's Damage Expert and C.P.A., calculated Moroni's loss as $4,648,585. This calculation was distilled from the total amount of accrual funds ($8,024,971.45) generated during the determined term of the Marketing Agreement. Erickson arrived at Moroni's damages amount after subtracting out those accrual funds generated by sales of Nebraska Turkey Grower's products and amounts that were determined to be customer rebates. Further, Erickson deducted allowable [West Liberty] expenses relating to freight, quality and pricing issues.

The original Damages estimate provided by Erickson is adopted with one adjustment. An additional post-hearing calculation was done by Erickson to determine what additional allowable deductions were justified by his 588 source document sample.[FN3] The damages calculated by Erickson are supported by the evidence, reasonable and justified. Moroni is therefore awarded $4,533,407 as compensatory damages.

---

FN3. At the hearing, Erickson was questioned about the allowable deductions and acknowledged that he had not extrapolated the allowable deductions discerned from his 588 item sample, to his larger Universe of "other GL items" and "Unclassified AP." He told the Panel that he would do the additional calculation post-hearing. The information was provided in Moroni's Post–Hearing Brief and set forth in Exhibit G.

Interim Award 9–10, ECF No. 30–3.

█ In the present case, the Arbitration Panel utilized the opinions of one expert,

Erickson, to calculate damages for the breach of contract claims brought by both parties and used Erickson's damages calculations to decide whether to grant prejudgment interest for both parties. West Liberty does not take issue with the "reasoning" utilized by Erickson and adopted by the Arbitration Panel in determining the proper compensatory damages and prejudgment interest to be awarded to West Liberty, but West Liberty does take issue with the fact that the Arbitration Panel utilized the same expert and the same "reasoning" to also award compensatory damages and prejudgment interest to Moroni.

■■■ Utah courts allow prejudgment interest when the underlying compensatory damages award is mathematically calculable based on fixed losses and other ascertainable variables. *Encon*, 210 P.3d at 274–75. West Liberty fails to demonstrate that the Arbitration Panel's compensatory damages award for Moroni was not mathematically calculable or otherwise based on uncertain criteria. The single post-hearing amendment Erickson made to his calculation of Moroni's damage award does not rise to the level of uncertainty in damages calculations that Utah courts have rejected. *See Saleh*, 133 P.3d at 436 (reasoning prejudgment interest was unavailable because the breach of contract claim was not liquidated before trial); *Cornia*, 898 P.2d at 1387 (affirming the district court's refusal to grant prejudgment interest where the nature of the damages sought was speculative and the damages evidence presented was conflicting and divergent). This Court finds that the Arbitration Panel has provided a "reasoned award" in its decision to grant Moroni compensatory damages, the compensatory damages award fits Utah requirements

with regard to the award of prejudgment interest, and therefore the prejudgment interest award is also a "reasoned award."

Under the standard of review that must be applied by this Court in appeals from arbitration decisions, West Liberty has failed to make the required showing that the Arbitration Panel "exceeded [its] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). West Liberty's Motion to Vacate as to Moroni's prejudgment interest award must therefore be denied.[4]

## C. Notice of Fraud

West Liberty filed a Notice of Fraud arguing that the arbitration provision in the Agreement was drafted by Moroni's counsel, despite Moroni's submission of the June 11, 2010, affidavit of Steven Johnson (Johnson), counsel for Norbest, Inc. (Norbest), wherein Johnson averred that he, not Moroni, drafted the arbitration provision contained in the Agreement. At the July 16, 2010, Motion to Compel Arbitration hearing, the parties discussed Johnson's role regarding the Agreement, and counsel for Moroni stated that Johnson was representing Norbest, not Moroni, at the time the Agreement was drafted. In the October 2010 Order, this Court discussed the drafting of the Agreement and determined that the Agreement was ambiguous as to the parties' intent regarding whether the arbitration provision survives post-termination.

In 2012, during arbitration discovery, Johnson stated in his deposition that he may have had an attorney-client relationship with Moroni's president around the time the Agreement was drafted. West Liberty asserts that based on this new

---

**4.** The Arbitration Panel's award in favor of West Liberty on its counterclaim unchallenged. The Court confirms that award.

information from Johnson, Johnson's previous affidavit submitted to this Court was false and misleading such that this Court must provide West Liberty with a remedy. West Liberty argues that due to Johnson's alleged fraudulent statement, the Court erred in its October 2010 Order in finding an enforceable agreement to arbitrate and compelling arbitration. West Liberty requests that the Court vacate the arbitration Final Award in its entirety and reconsider its October 2010 Order.

Moroni argues West Liberty's Notice of Fraud is untimely under Rule 60, pointing out that West Liberty has not formally challenged this Court's October 2010 Order nor filed a motion for the Court to reconsider the October 2010 Order.

█ The only type of fraud that can survive the one-year filing limitation set forth in Rule 60(c)(1) is a fraud that is committed under Rule 60(d)(3)—a fraud perpetrated on the Court. Fed.R.Civ.P. 60(c)(1) (setting forth time limitations for motions made under Rule 60(b)); Fed.R.Civ.P. 60(d)(3) (articulating a court's power to "set aside a judgment for fraud on the court"). As articulated by the Eighth Circuit, relief under Rule 60(d)(3) "is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence." *Landscape Props., Inc. v. Vogel,* 46 F.3d 1416, 1422 (8th Cir.1995) (citation and internal quotation marks omitted). The allegation at issue here deals with allegedly fraudulent evidence presented to this Court in the form of an affidavit and therefore warrants the Court's consideration.

█ After a comprehensive reading of Johnson's June 2010 affidavit; the official transcript of the July 16, 2010, Motion to Compel hearing; and Johnson's February 14, 2013, deposition testimony, the Court finds the impression provided to the Court was carefully limited and incomplete given the intertwined business relationships. However, the Court cannot conclude that the October 2010 Order was so fundamentally misinformed that the ruling would have been different. Nor can the Court adequately support a conclusion that Johnson has committed professional misconduct by knowingly making a misrepresentation to the Court. The interrelationships between these companies created a mix of allegiances, and Johnson clearly believed that he had an attorney-client relationship with Dave Bailey, Moroni, and Norbest for different transactions. At one point during his February 14, 2013, deposition, when asked if he represented Moroni with respect to "these transitional contracts," Johnson responded, "Yes." Johnson Dep. 34:17-20; Notice of Fraud—Tank Aff. Ex. B, ECF No. 35-3. That response generated a reasonable concern on the part of counsel for West Liberty. Later in the deposition, Johnson stated that he was confused at the time he provided that answer and clarified that he was, in fact, working for Norbest in drafting the Agreement, but that his work would also benefit Moroni. In his June 2010 affidavit, Johnson stated that he did not represent any party other than Norbest "in this process," thus limiting the scope of the work he believed was applicable to the case before this Court. Johnson Aff. ¶ 7, Reply to Def.'s Mot. to Compel—Attach. 1, ECF No. 13-2. He then notes that Moroni was a separate legal entity from Norbest.

While the communication to this Court on the issue was not without flaw, the Court ultimately does not have a record that unequivocally demonstrates the level of egregious conduct that would constitute a fraud on the Court. Due to the parties' overlapping business relationships, the business sophistication of the people involved, the fact that there is no dispute

now with the statement in Johnson's Affidavit that at the time the Agreement was drafted, Moroni was represented by separate counsel on the matter, and a careful review of both the information available to the Court in 2010 as well as the additional information obtained later, the Court finds no basis upon which to conclude its decision reached on contract construction in the October 2010 Order compelling arbitration would have been different.

### D. Attorney's Fees and Costs

In its Response to West Liberty's Motion to Vacate, Moroni requests that this Court award Moroni attorney's fees and costs due to West Liberty's alleged bad faith actions in filing and arguing its Motion to Vacate. Moroni argues that West Liberty's motion is a delay tactic following other redundant motions by West Liberty to obtain the relief it is requesting from this Court. Moroni further contends that West Liberty's Motion lacks any legitimate legal basis. Additionally, in its Reply in Support of its Motion to Confirm, Moroni argues that West Liberty's Notice of Fraud and accompanying arguments illustrate West Liberty's bad faith actions, which supports an award of attorney's fees and costs to Moroni.

 "[P]arties are required to pay their own attorney's fees unless an award of fees is authorized by statute." *Kelly v. Golden*, 352 F.3d 344, 352 (8th Cir.2003). "[T]he district court may properly exercise its inherent power [to grant attorney's fees] when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). "The 'bad faith exception' is not a substantive remedy, and it may be applied against either party based on its conduct during litigation, regardless of which party prevails." *Id.* (citing *Chambers*, 501 U.S. at 53, 111

S.Ct. 2123). "[I]nherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44, 111 S.Ct. 2123. "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* (citation and quotation marks omitted).

 West Liberty's initial motion to vacate the portion of the Final Award that grants prejudgment interest to Moroni ultimately fails on the record in this case, but the Court finds that the motion was not made in bad faith. Further, although the procedural basis for West Liberty's Notice of Fraud may have been flawed and the Court ultimately ruled against West Liberty, the Court finds it was not wholly without merit. Moroni has not carried its burden to show that attorney's fees and costs are warranted for its responses to West Liberty's Motion to Vacate and Notice of Fraud.

### III. CONCLUSION

West Liberty's Motion to Vacate in Part and Confirm in Part (ECF No. 30) must be **denied as to the motion to vacate and granted as to the motion to confirm.** Moroni's Motion for Confirmation (ECF No. 31) must be **granted.** Moroni's request for attorney fees is **denied.**

**IT IS SO ORDERED.**