**TREMCORP HOLDINGS, INC., Appellant/Plaintiff**
**v.**
**SCOTT HARRIS et al., Appellees/Defendants**

S. Ct. Civil No. 2016-0013

Supreme Court of the Virgin Islands

July 19, 2017

EDWARD L. BARRY, ESQ., ILP+ McChain Miller Nissman, St. Croix, USVI, *Attorney for Appellant.*

W. JOHN AMERLING, ESQ., MICHAEL J. SANFORD, ESQ., MICHAEL AARON RODGERS, ESQ., Sanford Amerling & Associates, St. Croix, USVI, *Attorneys for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and, SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 19, 2017)

HODGE, *Chief Justice*. Tremcorp Holdings, Inc. appeals from a February 16, 2016 order denying its motion to vacate an arbitration award as untimely pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. For the reasons that follow, we reverse.

## I. BACKGROUND

On August 7, 2012, Tremcorp, through its sole-owner Christopher Tremblay, entered into a stock purchase agreement for the purchase of all shares of U.D.I. Management, Inc. ("UDI"). UDI is a Virgin Islands corporation owned by Scott Harris and John McCann, which conducts business on St. Croix. (J.A. 41.) In exchange for the sale, Harris and McCann executed and delivered an initial promissory note in the principal amount of $500,000 and a second promissory note of $400,000. As security for the notes, Tremcorp pledged all of the outstanding stock of UDI under the stock purchase agreement, wherein a default under the first note automatically resulted in a default of the second note — giving Harris and McCann the ability to regain control of all outstanding UDI stock.

On February 7, 2013, Tremcorp defaulted on the repayment under the first note. (J.A. 31-32.) After Tremcorp failed to fulfill its obligations under the stock purchase agreement, Harris and McCann reasserted control over UDI and filed a lawsuit on its behalf seeking a preliminary injunction, a permanent injunction, and a declaratory judgment barring Tremblay from interfering with Harris's and McCann's repossession of UDI. (J.A. 9.) The Superior Court granted UDI's motion for preliminary injunction, enjoining Tremblay from "entering or occupying, or interfering with or preventing

[UDI] and its officers, agents and representatives from entering and occupying [UDI's] property." (J.A. 38.)

Shortly thereafter, Tremblay filed a separate action on behalf of Tremcorp alleging, among other things, fraudulent inducement in the transaction.[1] After Harris and McCann timely filed their answer, both parties stipulated to arbitration after failing to resolve their dispute by mediation.

The stipulated agreement to arbitrate was subsequently approved by the Superior Court. The agreement provided that:

> Section 13.5 of the agreement contains an all disputes clause requiring the parties to mediate such disputes and, if the mediation reaches an impasse, to arbitrate such matters pursuant to the Federal Arbitration Act, 9 U.S.C. [§] 1 et seq. (the "Act"). A copy of Section 13.5 of the [Stock Purchase] Agreement is attached to this Stipulation as Exhibit 1 (the "ADR" Clause).

(J.A. 41.) As referenced in the stipulated agreement, attached was a copy of section 13.5 of the stock purchase agreement, which stated in relevant part that:

> 13.5.1 *Arbitration.* If the parties fail in their attempt to resolve a dispute by mediation, they will submit the dispute to arbitration pursuant to the Federal Arbitration Act. The laws of the U.S. Virgin Islands will govern the rights and obligations of the parties with respect to the matters in controversy. The arbitrator will allocate all costs and fees attributable to the arbitration between the parties equally. The arbitrator's award will be final and binding and judgment may be entered in any court of competent jurisdiction. The parties agree that the proper venue to enforce the terms of this Agreement shall be St. Croix, Virgin Islands.

(J.A. 44.)

At arbitration, Tremcorp asserted that Harris and McCann violated the Virgin Islands Uniform Securities Act by making material misrepresentations of fact in connection with the sale of UDI. Ultimately, the arbitrator found that "the facts . . . demonstrate[d] that [Tremcorp] was negligent"

---

[1] The Superior Court ultimately "consolidated both cases on December 8, 2015." (J.A. 6); *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 366 (V.I. 2016).

because it was given ample time to conduct, and failed to conduct, any due diligence, "especially in light of the significant cost of the anticipated sale," and because of Tremcorp's "admitted ignorance about the business and real property at issue." (J.A. 66.) The arbitrator concluded that neither Harris nor McCann made deliberate misrepresentations, and that Tremcorp was not entitled to any damages. (J.A. 75.) The October 2, 2014 arbitration award provided that the award "is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." (J.A. 75.) However, the arbitrator required the parties to submit further briefing regarding whether Tremcorp should be required to pay attorney's fees.

After these submissions were filed by both parties, the arbitrator issued a November 26, 2014 order, in which he held that the arbitration rules adopted by the parties, as well as Virgin Islands law, vested him with the discretion to award attorney's fees. Nevertheless, the arbitrator determined that an award of attorney's fees was not warranted, explaining that "[t]he Arbitrator does not conclude that Claimant acted in bad faith or in an unscrupulous manner or that the instant arbitration was frivolous or engaged in for an unlawful purpose such as harassment." (J.A. 87.) Thus, the arbitrator ordered all parties to bear their own attorney's fees and costs.

On February 20, 2015 — 140 days after the delivery of the initial arbitration award, and 85 days after the award of attorney's fees — Tremcorp moved to vacate the arbitration award in the Superior Court. (J.A. 89.) Harris and McCann opposed the motion, contending, among other things, that the 90-day time limit of section 12 of the FAA established the controlling deadline to challenge the arbitration award, and thus, Tremcorp's filing was time-barred. (J.A. 170.) On February 16, 2016, the Superior Court entered an order denying Tremcorp's motion to vacate as untimely under section 12 of the FAA. (J.A. 3-4.) Tremcorp timely filed its notice of appeal with this Court on March 4, 2016.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has previously determined that it possesses jurisdiction to consider the merits of this appeal pursuant to title 4, § 32(a) of the Virgin Islands Code. *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 371 (V.I. 2016) (denying Harris's and McCann's motion to dismiss for lack of jurisdiction).

We exercise plenary review over the Superior Court's legal conclusions, and review its factual findings for clear error. *Coastal Air Transp. v. Royer*, 64 V.I. 645, 651 (V.I. 2016).

## B. Timeliness

As its sole issue for review on appeal, Tremcorp contends that the Superior Court erred in denying its motion to vacate the arbitration award as untimely under Section 12 of the FAA, which provides that "notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The stipulated agreement to arbitrate executed by both parties states unequivocally that, "if the mediation reaches an impasse," the parties agreed "to arbitrate such matters pursuant to the [FAA]," (J.A. 43), thus indicating that it was the parties' intent for relevant FAA provisions to control the arbitrative proceedings.[2]

Tremcorp waited 140 days after entry of the initial arbitration award, and 85 days after the award of attorney's fees before moving to vacate the arbitration award in the Superior Court. (J.A. 89.) The parties' principal dispute in this appeal concerns whether the time to file a motion to vacate the arbitration award under the FAA's three-month provision began to run at the time of the arbitrator's initial award stating that the award "is in full settlement of all claims," or began to run after the arbitrator issued his November 26, 2014 order pertaining to attorney's fees and costs.

■ To assess whether an arbitration award is final for purposes of judicial review so as to trigger the three-month limitations period under the FAA, federal courts apply the "complete arbitration rule," which embodies the principle that, "where an arbitrator believes the assignment is completed,

---

[2] Because there was some dispute between the parties regarding this Court's decision in *Gov't of the V.I. v. United Indus., Serv., Transp., Prof'l & Gov't Workers of N.A. (Danielson)*, 64 V.I. 312, 323 (V.I. 2016), where we held that "the provisions of the FAA . . . that establish filing deadlines — do not preempt local law," and in particular Tremcorp's contention that our decision in *Danielson* established that the statute of limitations provisions outlined in title 5, section 31 of the Virgin Islands Code should control time constraints under the FAA, we note that despite the seemingly definitive language in *Danielson*, that decision did not abrogate the general right of the parties to stipulate to a time to file suit, as was the case here. *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608, 67 S. Ct. 1355, 91 L. Ed. 1687 (1947); *accord Missouri, Kan., & Tex. Ry. Co. v. Harriman Bros.*, 227 U.S. 657, 672, 33 S. Ct. 397, 57 L. Ed. 690 (1913).

the award is final and appealable . . . [and when] the arbitrator does not believe the assignment is completed, the award is not final and appealable." *McKinney Restoration Co. v. Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 872 (7th Cir. 2004); *accord Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949-50 (8th Cir. 1992); *Union Switch & Signal Div. Am. Standard, Inc. v. United Elec., Radio & Mach. Workers, Local 610*, 900 F.2d 608, 610-12 (3d Cir. 1990).[3] Thus, we consider the arbitrator's intent to determine whether he "th[ought] he[ ] [was] through with the case," and if he did, the award was final for purposes of appeal. *Smart v. IBEW, Local 702*, 315 F.3d 721, 725-26 (7th Cir. 2002); *see also McKinney Restoration*, 392 F.3d at 871 (an award is final when it is "intended by the arbitrator to be his complete determination of every issue submitted to him"); *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) ("[A]n arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration[.]"). If any "substantive task remain[s] for the arbitrator to perform," the award is not final. *McKinney Restoration*, 392 F.3d at 871; *accord Millmen's Local 550, United Bhd. of Carpenters & Joiners of Am. v. Well's Exterior Trim*, 828 F.2d 1373, 1376-77 (9th Cir. 1987); *Pub. Serv. Elec. & Gas Co. v. System Council U-2*, 703 F.2d 68, 70 (3d Cir. 1983).

Here, it is clear that the arbitrator did not believe that he was through with the case after issuing the October 2, 2014 arbitration award, since he specifically required the parties to submit additional briefing so that he could take the time to determine whether Tremcorp should also be required to pay attorney's fees, and then subsequently issued the November 26, 2014 order directing each party to bear its own costs and attorney's fees. However, we recognize that some federal courts, in making finality determinations, consider whether the task that remained to be completed was substantive or ministerial. *Compare, e.g., Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its*

---

[3] We recognize that the court in *Union Switch* considered the complete arbitration rule under the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 185(a), rather than the FAA. However, as correctly acknowledged by both parties in their briefs, federal courts establish the same governing principles for finality and routinely cite decisions under one statute as authority for decisions under the other. *See e.g., International Union of Operating Engineers v. Murphy Co*, 82 F.3d 185, 188-89 (7th Cir. 1996). Accordingly, we interpret the complete arbitration rule the same.

*Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) ("[T]he reservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award."), *with Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc.*, 928 F. Supp. 83, 89 (D. Mass. 1996) ("[T]he court is unpersuaded that the distinction between ministerial tasks and significant issues provides a sufficiently clear guide for determining whether a vacatur action has accrued."). To determine whether a task is substantive or merely ministerial, courts consider factors such as whether the parties intended for the matter to be determined by the arbitrator. *See, e.g., Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) (concluding that the question of costs and fees was integral to the arbitrator's award where the parties expressly provided in their arbitration provision that the prevailing party would receive costs and fees).

At first glance, it may appear that attorney's fees are not an integral part of the agreement between the parties, in that the arbitration clause at issue in this case states that "[t]he arbitrator will allocate all costs and fees attributable to the arbitration between the parties equally." (J.A. 44.) However, the sentence immediately preceding this language states that "[t]he laws of the U.S. Virgin Islands will govern the rights and obligations of the parties with respect to the matters in controversy." (*Id.*) Moreover, the stipulated agreement to arbitration that the parties filed with the Superior Court also provided that "[t]he arbitration will be administrated by the Arbitrator and conducted pursuant to the Commercial Rules of the American Arbitration Association [("AAA")] to be modified by the Parties." (J.A. 42.) The parties enclosed their agreed-upon rules along with their stipulation, which were significantly modified from the AAA rules that they were based upon, with numerous rules crossed-out or otherwise amended. Importantly, AAA Commercial Rule 43(d)(ii), as agreed upon by the parties, expressly provided that "[t]he award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award *or it is authorized by law or their arbitration agreement.*" (J.A. 57 (emphasis added).) Moreover, AAA Commercial Rule 53 provides that "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." (J.A. 59.)

The arbitrator, in his November 26, 2014 order, expressly noted that the parties had agreed for the issue of attorney's fees to be determined by the arbitrator by virtue of their agreement to AAA Commercial Rule 43(d)(ii).

Moreover, the arbitrator cited 5 V.I.C. § 541 for the proposition that Virgin Islands law provides for the discretionary award of attorney's fees to a prevailing party in a civil action. The arbitrator then invoked AAA Commercial Rule 53 to determine that he "interprets both the AAA Rules and the law of the Virgin Islands as authorizing the award of attorney's fees in the Arbitrator's sole discretion," (J.A. 86), even though he ultimately exercised that discretion to deny an attorney's fee award.

■ In light of these circumstances, we conclude that — in this particular case — the parties agreed for attorney's fees to be an integral part of the arbitration award, and that the ultimate determination by the arbitrator as to whether Tremcorp should be required to pay attorney's fees was substantive rather than ministerial. As a result, we conclude that the appropriate date to commence the deadline date calculation for filing the motion to vacate was November 26, 2014 — the date that all substantive disputes in the case had been resolved. Thus, Tremcorp's filing of its motion to vacate on the 85th day following the November 26, 2014 ruling complied with the FAA's three-month provision as set out in 9 U.S.C. § 12.

## III. CONCLUSION

■ Because Tremcorp timely filed its motion to vacate the arbitration award 85 days after the award of attorney's fees, and thus satisfied the FAA's three-month provision as set out in 9 U.S.C. § 12, we reverse the Superior Court's February 16, 2016 order.[4] This matter is remanded for consideration on the merits of Tremcorp's motion to vacate the arbitration award.

---

[4] Although Harris and McCann ask this Court to advise the Superior Court as to the appropriate standard of review to apply on remand, and this Court possesses the authority to "address an issue that is likely to occur on remand," *Frett v. People*, 58 V.I. 492, 512-13 (V.I. 2013), given that the Superior Court has not had an opportunity to consider this un-extraordinary issue below, and this Court has not had the benefit of the sound reasoning of the Superior Court, or sufficient briefing by the parties, we decline to consider this issue on appeal. *See Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014) ("Although the Legislature vested this Court with the supreme judicial power of the territory, 4 V.I.C. § 21, original jurisdiction to adjudicate particular legal issues in the first instance remains a function of the Superior Court, *see* 4 V.I.C. § 76, to be disturbed only in truly extraordinary situations."). This is because "independent decisions" of the Superior Court "will improve the quality of appellate decisions." *Id.* (citation and internal quotation marks omitted).